NOTICE

Decision filed 09/04/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 241355-U

NO. 5-24-1355

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| ROBERT E. DORMAN, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Madison County. |
| | ) | |
| v. | ) | No. 22-MR-301 |
| | ) | |
| MADISON COUNTY BOARD, | ) | Honorable |
| | ) | Ronald S. Motil, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Presiding Justice McHaney and Justice Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*:   We affirm the circuit court's orders dismissing plaintiff's complaint with prejudice where (1) all claims raised were time-barred or moot, (2) all claims were barred by *res judicata*, and (3) the complaint failed to state a claim for *mandamus* relief. We affirm the circuit court's decision to impose sanctions pursuant to Rule 137 where plaintiff's complaint was objectively frivolous. However, we vacate the sanctions award and remand this matter to the circuit court for further findings as to the amount of sanctions where there is a significant discrepancy between the attorney fees incurred by defendant and the sanctions awarded but no indication the court intended to award sanctions for anything other than attorney fees incurred.

¶ 2    Plaintiff, Robert E. Dorman, filed a complaint against defendant, the Madison County Board, alleging various violations of the Open Meetings Act (5 ILCS 120/1 *et seq.* (West 2020)) with respect to three closed session meetings that took place in December 2017 and April 2020. The circuit court dismissed his complaint with prejudice, denied his motion for leave to file an amended complaint, and granted defendant's motion for sanctions pursuant to Illinois Supreme

1

Court Rule 137 (eff. Jan. 1, 2018). Plaintiff appeals, *pro se*, arguing that the circuit court (1) erred in finding his claims to be time-barred, lacking in merit, and barred by mootness, *res judicata*, and the rule against claim-splitting; (2) violated the Open Meetings Act by failing to review the verbatim records of the meetings *in camera*; (3) abused its discretion in determining that sanctions were warranted; (4) violated his right to due process by ordering his attorney not to allow him to personally review defendant's attorneys' unredacted billing invoices; and (5) ordered him to pay attorney fees that were not reasonable. We affirm the circuit court's judgment dismissing the complaint and determining that sanctions were warranted. However, we remand this matter for further findings concerning the amount of sanctions.

¶ 3                                    I. BACKGROUND

¶ 4     Plaintiff was formerly employed as the information technology director for Madison County. This is the fifteenth appeal he has filed in this court involving claims against Madison County, the City of Edwardsville, and various Madison County officials. At issue in this appeal are a closed session meeting of the Personnel and Labor Relations Committee that took place in December 2017 and two closed session meetings of the Madison County Board that took place in April 2020. These three meetings, which involved discussions that led to the termination of plaintiff's employment, were also at issue in some of his previous appeals.

¶ 5     On December 27, 2022, plaintiff filed a *pro se* complaint alleging that defendant violated various provisions of the Open Meetings Act in its conduct of all three meetings. In particular, he asserted that defendant failed to cite a statutory exemption to the requirement of holding meetings open to the public before going into closed session and that because the April 2020 meetings were held remotely due to the COVID-19 pandemic, there was no quorum at those two meetings when board members voted to go into a closed session. In addition, plaintiff alleged that defendant failed

2

to conduct a timely semi-annual review to determine whether the minutes and recordings of the meetings at issue should remain confidential (see 5 ILCS 120/2.06(d) (West 2022)) and further ran afoul of this obligation by citing different exemptions at prior semi-annual reviews.

¶ 6 As relief, plaintiff requested that the court order defendant to comply with the semi-annual review provision of the Open Meetings Act in the future and issue a writ of *mandamus* directing that the three closed session meetings at issue "no longer be kept confidential and immediately be made available for public inspection." He also requested an award of costs and attorney fees.

¶ 7 On January 18, 2023, defendant conducted a semi-annual review of the minutes and recordings of its closed meetings. It passed a resolution releasing some of those minutes and recordings to the public, retaining others as confidential, and authorizing the destruction of others. Attached to the resolution were three schedules—Schedule A listed the records to be released to the public; Schedule B listed the records to be retained as confidential; and Schedule C listed the records authorized for destruction. The meetings at issue in this appeal were all included in Schedule B.

¶ 8 On the same day, plaintiff submitted a request for a copy of defendant's resolution pursuant to the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2022)). Rather than wait for a reply, plaintiff went to the Madison County Board office in person on January 20, 2023, and demanded a copy of the resolution. He informed the office manager that a member of the County Board had authorized him to receive the copy. She provided plaintiff with a copy of the resolution; however, the three schedules were not attached.

¶ 9 On January 23, 2023, attorney G. Edward Moorman entered his appearance on behalf of plaintiff. The same day, through counsel, plaintiff filed a motion for a preliminary and permanent injunction prohibiting defendant from destroying any of the minutes or records of the meetings at

3

issue in this action. He argued that an injunction was necessary in view of defendant's resolution authorizing the destruction of meeting records.

¶ 10    On February 1, 2023, the FOIA officer responded to plaintiff's request by providing him with a copy of the resolution and all three schedules. As noted previously, the meetings at issue were included in Schedule B, which listed records to be retained as confidential. Plaintiff did not withdraw his motion for an injunction at this time.

¶ 11    On February 3, 2023, defendant filed a response in opposition to plaintiff's motion for an injunction. Defendant asserted that (1) plaintiff's request was moot, (2) plaintiff failed to allege facts demonstrating that he would suffer irreparable harm, and (3) he was not likely to succeed on the merits.

¶ 12    On the same date, defendant filed a motion to dismiss the complaint pursuant to both sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2022)). Defendant argued that (1) plaintiff's claims were all untimely under an Open Meetings Act provision requiring lawsuits to be filed within 60 days after the meetings alleged to have violated the Open Meetings Act (see 5 ILCS 120/3(a) (West 2022)); (2) each of the claims were barred either by *res judicata* or the rule against claim-splitting; and (3) some of the claims were moot. Defendant further contended that plaintiff failed to state a claim for a writ of *mandamus* because (1) his allegations concerning his right to relief were conclusory and (2) he did not identify any individual officer who allegedly failed to perform a ministerial, nondiscretional duty. Defendant explained that identifying an individual officer is crucial to a complaint seeking a writ of

*mandamus* because the County Board can only act through its individual members. See *People ex rel. Commissioners of Big Lake Special Drainage District v. Dixon*, 346 Ill. 454, 461 (1931).[1]

¶ 13    In support of its claim of *res judicata*, defendant attached copies of plaintiff's complaints in two previous cases and the circuit court's ruling on each. In case No. 21-MR-757, plaintiff raised essentially the same issues he raises here concerning the December 2017 meeting of the Personnel and Labor Relations Committee. The circuit court granted a motion to dismiss in that case based on the untimeliness of the complaint. In 20-MR-575, plaintiff raised many of the same issues he raises here concerning defendant's conduct of the two April 2020 County Board meetings. There, the circuit court entered summary judgment in favor of defendant, expressly finding that defendant complied with the requirements of the Open Meetings Act in conducting those meetings.

¶ 14    On February 8, 2023, defendant filed a motion for sanctions pursuant to Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018). It alleged that plaintiff previously filed multiple frivolous lawsuits involving the same three closed session meetings, which resulted in rulings against him. Defendant argued that claims that have already been decided are frivolous. Defendant further asserted that it was required to respond to a frivolous motion for an injunction because plaintiff's in-person demand for a copy of the January 2023 resolution led him to presume that the minutes and recordings at issue "may" have been approved for destruction. Defendant argued that plaintiff's pattern of frivolous litigation demonstrates a motive to harass Madison County officials.

¶ 15    On February 21, 2023, plaintiff filed a motion to withdraw his motion for a preliminary injunction. He stated that the injunction was no longer necessary as it appeared defendant did not intend to destroy any of the pertinent records.

---

[1]We note that more recent authority suggests that *mandamus* may be available to compel action by a public body. See, *e.g.*, *Hadley v. Ryan*, 345 Ill. App. 3d 297, 301 (2003) (explaining that *mandamus* is a remedy to compel "a public official or public body to perform a ministerial duty"); *Crump v. Illinois Prisoner Review Board*, 181 Ill. App. 3d 58, 60 (1989) (same).

¶ 16    The matter was set for a motion hearing; however, the hearing was continued several times. On August 1, 2023, plaintiff filed a *pro se* motion requesting a 45-day continuance, stating that his attorney died on June 28, 2023. The circuit court granted his request.

¶ 17    On October 18, 2023, plaintiff filed *pro se* responses in opposition to defendant's motion to dismiss and motion for sanctions. In his response to the motion for sanctions, plaintiff denied that his requests for a writ of *mandamus* and preliminary injunction were improper or made in bad faith, and he argued that the fact that he previously "filed multiple lawsuits is not evidence that the claims are without merit." In his response to defendant's motion to dismiss, plaintiff argued that his claims were not time-barred because he filed his complaint within 60 days of discovering the Open Meetings Act violation, which he described as "the failure to comply with the Act's requirement for semi-annual review of said closed meetings." He argued that the nature of the claims in 21-MR-757 differed from the claims raised here, thereby making *res judicata* inapplicable. Finally, he asserted that he could not have raised his claim for violation of the semi-annual review requirement when he filed his previous actions, arguing that "[i]t is impossible to split a claim that did not exist at the time of the filing of earlier cases."

¶ 18    On November 17, 2023, plaintiff filed a *pro se* motion for leave to file an amended complaint. The proposed amended complaint would have added the names of individual members of the Madison County Board as defendants; however, it contained no other proposed amendments.

¶ 19    On January 4, 2024, the case was assigned to Judge Motil in response to plaintiff's motion for substitution of Judge Foster as of right. See 735 ILCS 5/2-1001(a)(2) (West 2022). On February 1, 2024, attorney Thomas Maag entered his appearance on behalf of plaintiff.

¶ 20 The matter came for a motion hearing on May 3, 2024. We note that the record does not contain either a transcript or a bystander's report of the hearing. The circuit court took matters under advisement and issued a written order on July 1, 2024.

¶ 21 In its order, the court first ruled on defendant's motion to dismiss. The court found that plaintiff's claims were all barred by *res judicata* because they were decided on the merits in two previous cases. The court explained that in 20-MR-575, the court granted summary judgment in favor of the defendant after finding that both April 2020 meetings complied with the requirements of the Open Meetings Act. The court further explained that in 21-MR-757, the court granted a motion to dismiss claims related to the December 2017 meeting, finding them to be time-barred. The court further concluded that plaintiff's claims were time-barred, moot, and barred by the doctrine of claim-splitting. In addition, the court found that plaintiff failed to state a claim because (1) he named only the County Board as a whole, not its individual members and (2) he made only conclusory allegations that he was entitled to relief under FOIA. The court therefore granted defendant's motion to dismiss.

¶ 22 Next, the court denied plaintiff's motion for leave to file an amended complaint. The court found that (1) the proposed amendment would not cure the defects in the original complaint and (2) the plaintiff waited nearly a year before requesting leave to amend.

¶ 23 Finally, the court addressed defendant's motion for sanctions. The court determined that sanctions were appropriate, finding that plaintiff engaged in a pattern of relitigating previously adjudicated claims and noting that an attempt to relitigate an earlier claim constitutes a frivolous filing when a party "manipulates the claim in trying to avoid *res judicata*." The court ordered defendant to submit affidavits of fees and costs by July 15, 2024, and granted plaintiff 10 days after that to file a written objection challenging the reasonableness of those fees.

7

¶ 24    On July 15, 2024, defendant filed a motion for an award of attorney fees, requesting $34,611.50. Attached were redacted copies of billing invoices for legal services provided to defendant throughout these proceedings. The copies showed the amounts billed, but the hours worked and specific services performed were redacted. In the motion, defendant noted that unredacted copies of the invoices could be provided to the court for *in camera* inspection upon request.

¶ 25    On July 23, 2024, plaintiff filed a motion to strike defendant's motion for fees. He asserted that his lawsuit prompted defendant to comply with the requirement of conducting a semi-annual review, thereby demonstrating that his complaint was not frivolous. He further contended that he should be given access to unredacted invoices, arguing that defendant waived any privilege by placing its fees at issue and noting that the redacted invoices provided no information on the hours billed. Finally, he argued that the amount billed was unreasonable because it was "more than half the yearly salary of more than half of the lawyers that work at the Madison County State's Attorney Office."[2] Plaintiff requested that the motion for fees be stricken or, in the alternative, that defendant be ordered to provide unredacted billing statements.

¶ 26    On September 10, 2024, the circuit court held a hearing on plaintiff's motion to strike and defendant's motion for fees. Counsel for defendant offered to provide unredacted copies of the invoices to plaintiff's attorney to be kept confidential for his attorney's eyes only. Plaintiff's attorney agreed that this was acceptable. Noting that he had a trial scheduled the following week, he requested 20 days to respond. Counsel for defendant indicated that to save time, he would provide a copy of the unredacted bills to plaintiff's attorney before leaving court. The circuit court

---

[2]Defendant's counsel explained that the attorneys who worked on litigation for defendant were sworn in as "deputy State's Attorneys," which was a prerequisite for billing Madison County for their services.

entered an order that day reflecting this agreement, including a 20-day deadline for plaintiff to file his response.

¶ 27    In accordance with the agreement, defendant's attorney provided a copy of the unredacted invoices to plaintiff's attorney after the hearing and filed another copy with the court under seal two days later. Plaintiff did not file a response within the 20 days allotted.

¶ 28    On October 7, 2024, the court entered an order awarding sanctions. After noting that plaintiff had not responded to the unredacted invoices, the court stated that it had reviewed the invoices and found that attorney fees of $43,305.50 were fair and reasonable.

¶ 29    The same day, plaintiff filed a motion to vacate the sanctions order and for an extension of time. He requested an extension until October 14, 2024, to respond to defendant's invoices, citing attorney time conflicts. He indicated, however, that he would not object to the reasonableness of the fees beyond the general objection already put forth.

¶ 30    On November 25, 2024, the circuit court denied plaintiff's motion after a hearing. This timely appeal followed.

¶ 31                                  II. ANALYSIS

¶ 32                              A. Motion to Dismiss

¶ 33    As discussed previously, the circuit court dismissed the complaint with prejudice, finding plaintiff's claims to be time-barred, lacking in merit, moot, and barred by *res judicata* and the rule against claim-splitting. Plaintiff contends that each of these rulings was in error. We disagree.

¶ 34    This case involves a ruling on a motion to dismiss filed pursuant to both sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2022)). In considering both types of motions, we must accept all well-pled facts in the complaint as true and interpret those allegations in the light most favorable to plaintiff. *Kucinsky v. Pfister*, 2020 IL App (3d)

9

170719, ¶ 33. A motion pursuant to section 2-619 asserts the existence of an affirmative matter that defeats a plaintiff's claim even assuming the legal sufficiency of the complaint. *Wilson v. Quinn*, 2013 IL App (5th) 120337, ¶ 11. The question presented by a section 2-615 motion is whether the factual allegations in the complaint would entitle plaintiff to relief if proven. *Kucinsky*, 2020 IL App (3d) 170719, ¶ 54. We construe complaints liberally. *Id.* ¶ 56. However, a complaint must contain sufficient factual allegations to bring its claims within cognizable causes of action. *Id.* ¶ 54. Our review of the circuit court's ruling on a motion to dismiss pursuant to either section 2-615 or section 2-619 is *de novo*. *Neppl v. Murphy*, 316 Ill. App. 3d 581, 583 (2000).

¶ 35    Plaintiff contends that the court erred in finding his claims to be time-barred. The pertinent statute provides that a complaint alleging violations of the Open Meetings Act must be filed "prior to or within 60 days of the meeting alleged to be in violation of this Act." 5 ILCS 120/3(a) (West 2022). If a plaintiff files a timely request for review with the Public Access Counselor, he must file his complaint within 60 days of the decision. *Id.* Here, plaintiff filed a request for review alleging that defendant failed to conduct semi-annual reviews of the minutes of all three meetings, a claim he also raises in this appeal. The Public Access Counselor issued a decision letter on July 2, 2021. There is no question that plaintiff filed the instant complaint substantially more than 60 days after that date and well beyond the 60-day limits with respect to all three meetings at issue.

¶ 36    Plaintiff contends, however, that his complaint was timely under the discovery rule and the continuing violation doctrine. This is so, he explains, because he filed his complaint "within 60 days of discovering the Board's ongoing failure to review closed session minutes and its retroactive alteration of exemptions." We are not persuaded.

¶ 37    Plaintiff correctly notes that the relevant provision contains a version of the discovery rule allowing for an action to be filed within 60 days of discovery of the violation. However, he

incorrectly asserts that an action may be filed "within 60 days of discovery of the violation by the person bringing the action." Instead, the statute provides that, "if facts concerning the meeting are not discovered within the 60-day period," the action must be filed "within 60 days of the discovery of a violation *by the State's Attorney*." (Emphasis added.) 5 ILCS 120/3(a) (West 2022); see also *Safanda v. Zoning Board of Appeals of the City of Geneva*, 203 Ill. App. 3d 687, 691 (1990) (explaining that "the statute does not measure the opportunity to file from the complainant's discovery").

¶ 38    In *Safanda*, a case cited by plaintiff, the circuit court found that the plaintiff's amended complaint was not timely under the version of the statute in effect at the time because it was filed more than 45 days after the meeting at issue occurred. *Safanda*, 203 Ill. App. 3d at 690-91. On appeal, the Second District noted that there was no evidence that the state's attorney had discovered the alleged Open Meetings Act violation and concluded that, as such, the 45-day time period based on the state's attorney's discovery of the violation had not yet run. *Id.* at 691.

¶ 39    However, in *Paxon v. Board of Education of School District No. 87*, 276 Ill. App. 3d 912 (1995), the First District reached a different result in considering the question of whether an individual "other than the State's Attorney may bring an action within 45 days of the State's Attorney's discovery of a violation of the Act." *Id.* at 921. The *Paxon* court declined to follow *Safanda*, finding "that the 'discovery rule' inures only to the benefit of the State's Attorney." *Id.* at 921-22. The court explained: "If, as contemplated by plaintiffs, any person could file suit as late as 45 days after the State's Attorney's discovery of a violation of the Act, then the 45-day limitation period from the date of the meeting is rendered superfluous." *Id.* at 922. The *Paxon* court acknowledged that its interpretation of the statute meant that private plaintiffs "have a very short and definite period of time in which to bring a civil action." *Id.* at 923. The court emphasized,

11

however, that "nothing prohibits a person who is aggrieved by an allegedly improper action to notify the State's Attorney even after 45 days of the meeting" and ask the state's attorney to file suit. *Id.* at 924. The court thus held that the time limit for an individual other than the state's attorney to file suit begins to run when the meeting that allegedly violates the Open Meetings Act takes place, regardless of when the violation is discovered. See *id.*

¶ 40       This court has followed *Paxon* rather than *Safanda*. See *P&S Grain, LLC v. Williamson County*, 2014 IL App (5th) 130507-U, ¶ 24.[3] Thus, the Open Meetings Act's discovery rule does not apply to a private litigant such as the plaintiff.

¶ 41       We likewise reject plaintiff's argument that his complaint was timely under the "continuing violation doctrine." He largely relies on *Cunningham v. Huffman*, 154 Ill. 2d 398 (1993), which held that the statute of repose in a medical malpractice case involving a continuous course of negligent treatment begins to run after the course of treatment ends. *Id.* at 406. However, as our supreme court has explained, "*Cunningham* did not adopt a continuing violation rule of general applicability in all tort cases or, as here, cases involving a statutory cause of action. Rather, the result in *Cunningham* was based on interpretation of the language contained in the medical malpractice statute of repose." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 199 Ill. 2d 325, 347 (2002). Thus, there is no "continuing violation doctrine" applicable to the claims at issue in this case.

¶ 42       Here, plaintiff filed a three-count complaint. In each count, he alleged that defendant violated the Open Meetings Act at one of three meetings that occurred in December 2017 or April 2020. In each count, plaintiff further alleged that defendant violated the Open Meetings Act during

---

[3]We note that parties may not cite unpublished orders filed before January 1, 2021, except to support claims of double jeopardy, *res judicata*, collateral estoppel, or law of the case. Ill. S. Ct. R. 23(e) (eff. Jan. 1, 2021). However, nothing in Rule 23 prohibits the appellate court from following the reasoning of an unpublished order. *Byrne v. Hayes Beer Distributing Co.*, 2018 IL App (1st) 172612, ¶ 22.

the meetings at which it conducted semi-annual reviews of the minutes and records of closed session meetings. Each of the three closed session meetings took place well more than 60 days before plaintiff filed his complaint in December 2022. The last of the semi-annual review meetings occurred on June 15, 2022, which was likewise more than 60 days before plaintiff filed his complaint. Thus, the circuit court correctly determined that plaintiff's claims with respect to all three closed session meetings and the subsequent semi-annual review meetings were time-barred under the Open Meetings Act.

¶ 43    Plaintiff's final contention in all three counts of his complaint was that defendant violated the Open Meetings Act by failing to hold a semi-annual review meeting in December 2022. According to plaintiff, defendant was required to conduct its semi-annual review precisely within six months of its previous review on June 15, 2022. As such, he contends that defendant violated the Open Meetings Act by failing to do so on December 15, 2022, only 12 days before he filed his complaint, thus making it timely. We first note that, given the structure of plaintiff's complaint, it is not clear that these allegations form a separate and distinct claim. Nevertheless, plaintiff requested relief specific to these allegations by asking the court to order defendant to hold a semi-annual review meeting. Assuming these allegations therefore constitute a separate and distinct claim, we agree that it was timely, but we find that the circuit court correctly dismissed it for two reasons.

¶ 44    First, the claim became moot when defendant held its semi-annual review meeting on January 18, 2023. Plaintiff requested that the court order the defendant to hold the meeting. Once defendant held the meeting, there was no effective relief the circuit court could grant, thus rendering the claim moot. See *In re Mary Ann P.*, 202 Ill. 2d 393, 401 (2002).

¶ 45     Second, the claim lacked merit. The pertinent statute requires public bodies such as defendant to meet to review the minutes of their closed meetings "every 6 months, *or as soon thereafter as is practicable*, taking into account the nature and meeting schedule of the public body." (Emphasis added.) 5 ILCS 120/2.06(d) (West 2022). Holding a semi-annual review meeting a few weeks after the Christmas holidays does not run afoul of the statutory requirement. In sum, plaintiff's claim that defendant violated the Open Meetings Act by not holding a semi-annual review meeting in mid-December 2022 was properly dismissed because it was both moot and lacking in merit, while the remainder of plaintiff's claims were properly dismissed because they were untimely.

¶ 46     We likewise find that, contrary to plaintiff's contention, his claims were barred by the doctrine of *res judicata*. Pursuant to that doctrine, a final judgment on the merits bars any subsequent action on the same cause of action between the same parties or their privies. *Rein v. David A. Noyes & Co.*, 172 Ill. 2d 325, 334 (1996). *Res judicata* applies when the following three requirements are satisfied: (1) a court of competent jurisdiction rendered a final judgment on the merits, (2) there was an identity of cause of action, and (3) there was an identity of parties. *Id.* at 335. With respect to the first requirement, an involuntary dismissal pursuant to section 2-615 or 2-619 of the Code of Civil Procedure constitutes a final judgment on the merits. *Id.* at 335-36 (citing Ill. S. Ct. R. 273 (eff. Jan. 1, 1967); *Downing v. Chicago Transit Authority*, 162 Ill. 2d 70, 74-75 (1994)). As to the second requirement, the facts giving rise to a plaintiff's right to relief define the cause of action. *Id.* at 338-39. As such, "to determine whether there is an identity of causes of action between the first and second suits, we must look to the facts that give rise to plaintiffs' right to relief, not simply to the facts which support the judgment in the first action." *Id.* The doctrine

14

of *res judicata* applies not only to claims actually decided in the previous action, but also to matters that could have been decided. *Id.* at 334-35.

¶ 47    Plaintiff concedes that a court of competent jurisdiction rendered a final judgment on the merits and that there was an identity of parties. He disputes only the second requirement—that there was an identity of causes of action. We find that the claims raised in this complaint are identical to the causes of action asserted in two previous cases, 21-MR-757 and 20-MR-575.

¶ 48    In 21-MR-757, plaintiff alleged that defendant violated the Open Meetings Act in its conduct of the same December 2017 meeting at issue in this case by failing to disclose the purpose of going into a closed session before doing so. He further asserted that defendant violated the Open Meetings Act when it reviewed the minutes and records of this meeting during semi-annual reviews conducted on April 17, 2019; November 18, 2019; June 17, 2020; and June 16, 2021. Specifically, he claimed that defendant improperly cited a "pending SAO review" as an exemption during the first two reviews, improperly cited various exemptions under FOIA rather than the Open Meetings Act at the June 2020 review, and cited the litigation exemption (5 ILCS 120/2(c)(11) (West 2020)) for the first time at the June 2021 review. The circuit court dismissed the complaint with prejudice, finding it to be time-barred under the Open Meetings Act.

¶ 49    Count I of plaintiff's complaint in this action contains identical allegations. The only difference is that it contains additional allegations concerning the exemptions cited by defendant during semi-annual reviews conducted in December 2021 and June 2022 and an allegation that defendant violated the Open Meetings Act by not conducting a review in December 2022. As we explained earlier, the question is whether the operative facts giving rise to a right to relief are identical, not whether all facts are the same. See *Rein*, 172 Ill. 2d at 339. Here, the operative facts plaintiff claims entitle him to relief are his allegations that defendant violated the Open Meetings

Act in its conduct of the original meeting. The additional allegations concerning the more recent semi-annual review meetings do not alter the operative facts. As such, count I of the instant action and 21-MR-757 share an identity of causes of action.

¶ 50    Finally, we again note that plaintiff asserted that his allegations concerning the lack of a semi-annual review meeting in December 2022 entitled him to additional relief—specifically, an order directing defendant to hold the meeting. To the extent these allegations can be construed as a separate and distinct claim, we have already concluded that the claim was properly dismissed due to mootness and a lack of merit.

¶ 51    In the complaint filed in 20-MR-575, plaintiff asserted that defendant violated the Open Meetings Act in its conduct of the two April 2020 meetings by failing to specifically state in the published agendas that his employment and the employment of a coplaintiff would be discussed during the closed sessions.[4] Defendant filed a motion for summary judgment. In response, plaintiff alleged that the meetings were held remotely. He argued that because the members who voted to go into closed session were not physically present when they voted, they did not satisfy the requirement of a quorum. He contended that this created a factual issue precluding summary judgment.

¶ 52    The circuit court granted defendant's motion for summary judgment, concluding that (1) the posted agendas for both meetings were sufficient to comply with the requirements of the Open Meetings Act and (2) defendant met remotely due to the COVID-19 pandemic in compliance with an executive order which suspended the requirement of in-person attendance (5 ILCS 120/2.01 (West 2020)). The court noted that although plaintiff asserted "that the Governor may

---

[4]We note that 20-MR-575 involved a suit by plaintiff and another former Madison County employee against Madison County. They sought administrative review of the decision to terminate their employment in addition to raising claims under the Open Meetings Act.

16

have lacked the authority to issue the Executive Order," he cited no authority to support his assertion. On appeal, this court affirmed both rulings. See *Dorman v. Madison County*, 2023 IL App (5th) 220320-U, ¶¶ 34-35.

¶ 53    In counts II and III of the complaint in this case, plaintiff again asserts that because defendant met remotely, it did not satisfy the requirement of a quorum when it voted to close portions of the meetings it held on April 15 and 16, 2020. This precise issue was previously decided in 20-MR-575. It is therefore barred by *res judicata*. Plaintiff further asserted that at semi-annual reviews conducted on June 16, 2021; December 15, 2021; and June 15, 2022, defendant cited both the employment exemption (5 ILCS 120/2(c)(1) (West 2022)) and the litigation exemption (*id.* § 2(c)(11)), when it cited only the employment exemption prior to going into closed session, and that defendant did not conduct a semi-annual review in December 2022. As explained previously, however, the operative facts plaintiff claim entitle him to the relief he requests are the factual allegations concerning the conduct of the April 2020 meetings themselves. As such, we find that counts II and III were barred by *res judicata*.

¶ 54    Finally, we also agree with the circuit court that plaintiff's complaint failed to state a claim for *mandamus*. We reach this conclusion for different reasons than those relied upon by the trial court. See *Mullins v. Evans*, 2021 IL App (1st) 191962, ¶ 25 (stating that this court may affirm the circuit court's ruling on any basis appearing in the record even if it was not the basis relied upon by the circuit court).

¶ 55    *Mandamus* is an extraordinary remedy. A writ of *mandamus* directs a public official to perform a ministerial duty that does not involve the exercise of discretion. *Hadley v. Ryan*, 345 Ill. App. 3d 297, 301 (2003). To be entitled to *mandamus* relief, a plaintiff must establish (1) a clear right to the requested relief, (2) a clear duty to act on the part of the public official, and (3) clear

17

authority for the public official to comply with the requested writ. *Cordrey v. Prisoner Review Board*, 2014 IL 117155, ¶ 18.

¶ 56    Here, plaintiff sought a writ of *mandamus* directing defendant to make the minutes and recordings of three meetings public. However, *mandamus* is not available to compel a public official or public body to reach a particular decision or to exercise its discretion in a specific manner even where there has been an erroneous exercise of discretion. *Hadley*, 345 Ill. App. 3d at 301. In addition, while the Open Meetings Act authorizes circuit courts to issue a writ of *mandamus* "requiring that a meeting be open to the public" (5 ILCS 120/3(c) (West 2022)), *mandamus* is generally not applicable to meetings that have already occurred (see, *e.g.*, *Board of Regents of Regency University System v. Reynard*, 292 Ill. App. 3d 968, 979 (1997)). We thus conclude that plaintiff's complaint failed to state a claim for *mandamus*.

¶ 57    We recognize that plaintiff sought other relief as well. He asked that the court order defendant to comply with the semi-annual review provisions of the Open Meetings Act in the future. We note that an order mandating future compliance with the requirements of the Open Meetings Act may be appropriate in cases where a writ of *mandamus* is not. See *Reynard*, 292 Ill. App. 3d at 979-80. However, as we have already discussed at length, we find that each component of plaintiff's complaint was properly dismissed based on one or more of the following grounds: untimeliness, *res judicata*, mootness, or failure to state a claim. For this reason, we conclude that the circuit court properly dismissed the complaint in its entirety.

¶ 58                                 B. *In Camera* Review

¶ 59    Plaintiff next argues that the circuit court violated the Open Meetings Act when it failed to conduct an *in camera* review of the minutes and records of the three meetings he challenged. According to plaintiff, the applicable statute requires such review any time a party challenges a

18

public body's decision to keep meeting records confidential. Because this is an issue of statutory construction, our review is *de novo*. See *Bouton v. Bailie*, 2014 IL App (3d) 130406, ¶ 7.

¶ 60    The applicable statute provides, in pertinent part: "In the case of a civil action brought to enforce this Act, the court, *if the judge believes such an examination is necessary*, must conduct such *in camera* examination of the verbatim record as it finds appropriate in order to determine whether there has been a violation of this Act." (Emphasis added.) 5 ILCS 120/2.06(e) (West 2022). Where statutory language is clear and unambiguous, we will enforce it as written without reading into the statute any limitations, exceptions, or conditions the legislature did not intend. *King Auto Sales, Inc. v. Act Now Towing*, 2021 IL App (5th) 200143, ¶ 17. The statutory language at issue clearly requires circuit courts to conduct any examination of the records they deem necessary *in camera*, but it does not require courts to examine the records if they do not believe it is necessary to do so in order to resolve the issues before them. Here, as previously discussed, the circuit court properly dismissed the complaint on grounds of untimeliness, mootness, *res judicata*, and failure to state a claim for *mandamus*. Each of these issues could be resolved without reviewing the verbatim records of the meetings themselves. We find no error.

¶ 61                                    C. Sanctions

¶ 62    Finally, plaintiff argues that the circuit court abused its discretion in awarding sanctions pursuant to Rule 137. He contends that (1) the court improperly considered his previous litigation in determining that sanctions were warranted; (2) the court should have applied the Open Meetings Act's fee-shifting provision (5 ILCS 120/3(d) (West 2022)) instead of Rule 137; (3) being prohibited from personally reviewing the unredacted invoices hindered his ability to challenge the reasonableness of the fees, thereby violating his right to due process; and (4) the amount awarded did not represent reasonable attorney fees. We address these contentions in turn.

19

¶ 63    As plaintiff correctly notes, Rule 137 authorizes a circuit court to impose sanctions against a party who files any pleading that is not well-grounded in fact or law or is filed for an improper purpose. Ill. S. Ct. R. 137 (eff. Jan. 1, 2018); *Garlick v. Bloomington Township*, 2018 IL App (2d) 171013, ¶ 43. The purpose of Rule 137 is to prevent parties from filing frivolous lawsuits. See *Garlick*, 2018 IL App (2d) 171013, ¶ 43. Whether to impose sanctions is a matter within the circuit court's discretion. We will not reverse that decision absent an abuse of discretion, which occurs only where no reasonable person could take the view adopted by the circuit court. *Id.* ¶ 25.

¶ 64    Plaintiff contends that because Rule 137 authorizes sanctions only where a specific pleading is frivolous or filed for an improper purpose, the court abused its discretion in considering his prior history of litigation. We disagree.

¶ 65    Contrary to plaintiff's contention, the circuit court determined that sanctions were appropriate because it found that his complaint was frivolous. As we have already discussed, one of the reasons the court found the complaint to be frivolous was the fact that his claims were barred by the doctrines of *res judicata* and claim-splitting, a finding that required the court to consider the previous litigation between these parties. A complaint raising claims that have already been decided is frivolous and may be subject to sanctions. *Id.* ¶ 46. To the extent plaintiff argues the court awarded sanctions based solely on his prior litigation, we reject his characterization of the record.

¶ 66    We recognize that, in its motion for sanctions, defendant pointed to plaintiff's litigation history in arguing that he filed this complaint for the improper purpose of harassing Madison County officials. While this may be a relevant consideration in assessing a party's motive, the circuit court ordinarily must hold an evidentiary hearing when the imposition of sanctions is based on a pleading filed for an improper purpose. *Hess v. Lloyd*, 2012 IL App (5th) 090059, ¶ 26.

20

However, a court need not hold such a hearing when it imposes sanctions due to the objectively unreasonable nature of the pleading itself. *Id.* Here, defendant argued that sanctions were warranted both because plaintiff's complaint was objectively frivolous and because he filed it for an improper purpose. Although the circuit court referred to plaintiff's pattern of filing frivolous lawsuits, it expressly found that the specific pleading at issue in this case was objectively frivolous. Under these circumstances, we find no abuse of discretion. *Id.* ¶ 27.

¶ 67    Plaintiff next contends that the circuit court erred because it should have applied the fee-shifting provision in section 3(d) of the Open Meetings Act (5 ILCS 120/3(d) (West 2022)) rather than Rule 137. We disagree.

¶ 68    Section 3(d) of the Open Meetings Act allows circuit courts to "assess against any party, except a State's Attorney, reasonable attorney's fees and other litigation costs reasonably incurred by any other party who substantially prevails in any action brought in accordance with this Section." 5 ILCS 120/3(d) (West 2022). According to plaintiff, he was the party who substantially prevailed because his lawsuit acted as a catalyst to prompt defendant's compliance with the semi-annual review requirement. In support of this contention, he notes that the semi-annual review meeting took place soon after he filed his complaint. We reject this contention for two reasons.

¶ 69    First, as plaintiff acknowledged in his complaint, defendant previously conducted semi-annual reviews on April 17, 2019; November 20, 2019; June 17, 2020; June 16, 2021; December 15, 2021; and June 15, 2022. In light of this history, it is not reasonable to presume that plaintiff's lawsuit acted as a catalyst prompting the January 18, 2023, semi-annual review.

¶ 70    Second, plaintiff's allegation that defendant failed to conduct a semi-annual review in December 2022 is only one allegation in his complaint. He also alleged that defendant violated the Open Meetings Act at the three closed session meetings in December 2017 and April 2020 and at

21

the six previous semi-annual review meetings identified in his complaint. Since the complaint was dismissed with prejudice in its entirety, plaintiff was not the substantially prevailing party and would not have been entitled to an award of attorney fees pursuant to section 3(d) of the Open Meetings Act.

¶ 71    Moreover, the fact that the Open Meetings Act includes a fee-shifting provision does not make Rule 137 inapplicable. As stated previously, the purpose of Rule 137 is to discourage frivolous pleadings. See *Garlick*, 2018 IL App (2d) 171013, ¶ 43. The inclusion of a fee-shifting provision in legislation does not somehow negate this purpose. We find no error.

¶ 72    Next, plaintiff contends that the court violated his right to due process and undermined his ability to challenge the reasonableness of defendant's attorney fees by ordering that the unredacted invoices remain confidential and for "attorney's eyes only." We disagree. Plaintiff was represented by counsel at the time, and counsel had full access to the unredacted invoices.

¶ 73    Finally, plaintiff contends that the amount he was ultimately ordered to pay does not represent reasonable attorney fees. The circuit court expressly found that the fees charged by defendant's attorneys were reasonable for the services rendered. Although we find no error in this determination, the basis for the amount plaintiff was ultimately ordered to pay is not clear on the record before us.

¶ 74    In determining the reasonableness of attorney fees, courts should consider factors such as the skill and standing of the attorneys retained, the nature of the case, the novelty or difficulty of the issues involved, the usual and customary charges in the community for similar services, and the extent to which there is a connection between the fees charged and the litigation. *Id.* ¶ 55. Because the reasonableness of fees is a factual matter to be proven, it ordinarily requires an

22

evidentiary hearing. However, the circuit court has the discretion to rely on unrefuted affidavits of counsel concerning legal fees. *Hess*, 2012 IL App (5th) 090059, ¶ 26.

¶ 75 Here, the circuit court indicated that it carefully reviewed the unredacted invoices provided by defendant's attorneys. Additional information before the court included the extent to which plaintiff's numerous requests for continuances delayed the litigation, requiring additional work, and the fact that the attorneys representing defendant charged different hourly rates for their services. We find no abuse of discretion in the circuit court's conclusion that the invoices represented reasonable attorney fees.

¶ 76 Plaintiff contends, however, that the circuit court merely "rubber-stamped" the fees charged by defendant's attorneys. In support of this claim, he points to a single charge of $210 for 1.2 hours spent on "legal analysis of jury instructions" and drafting and revising instructions. The charge appeared in a December 2023 invoice. This case was dismissed at the pleading stage, and there is no indication that a jury trial would have been warranted had the matter proceeded to trial. As such, it is unclear how this particular charge bears a connection to the litigation. See *Garlick*, 2018 IL App (2d) 171013, ¶ 55.

¶ 77 Moreover, the circuit court awarded sanctions of $43,305.50, finding this amount to represent reasonable attorney fees, while the evidence established that defendant incurred fees of $34,611.50. We note that plaintiff does not address this discrepancy in his brief. As such, he has forfeited consideration of this issue. See *Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 23; Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). However, forfeiture is a limitation on the parties, not the court, and this court has the discretion to consider forfeited claims "in the interest of finding a just result." *Kic*, 2011 IL App (1st) 100622, ¶ 23. Here, the discrepancy is significant, and while plaintiff did

23

not specifically raise this issue, he did generally challenge the propriety of the amount of sanctions awarded. We therefore choose to address this issue.

¶ 78    Defendant correctly contends that Rule 137 permits an award of sanctions *including* but not limited to reasonable attorney fees. See Ill. S. Ct. R. 137 (eff. Jan. 1, 2018). On the record before us, however, there is no indication the circuit court intended to award sanctions other than the legal fees actually incurred by defendant. In its order awarding sanctions, the court stated as follows: "The Court finds the legal fees and costs of the Defendant's attorneys in the amount of $43,305.50 to be fair and reasonable for the legal work performed." At no point did the court inquire about any additional costs incurred or indicate that it intended to impose sanctions beyond the reasonable attorney fees requested by defendant. On this record, it appears that the award of $43,305.50 may have been a mathematical or clerical error. It is also unclear whether the circuit court considered the propriety of the $210 charged for reviewing and revising jury instructions. Because the difference between the fees incurred ($34,611.50) and the sanctions awarded was substantial, we believe it is necessary to remand this matter to the circuit court so the court can make findings addressing these issues.

¶ 79                                III. CONCLUSION

¶ 80    For the foregoing reasons, we affirm the judgment of the circuit court dismissing the complaint with prejudice. We affirm the circuit court's decision to award sanctions; however, we vacate the order awarding sanctions in the amount of $43,305.50 and remand for further findings concerning the propriety of that amount.

¶ 81    Affirmed in part and vacated in part; cause remanded with directions.